UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Abshir H. A., | Case No. 19-cv-1033 (PAM/TNL) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| William Barr, U.S. Attorney General, | |
| Kevin McAleenan, Acting Secretary, Department of Homeland Security, | |
| Ronald D. Vitiello, Acting Director, Immigration and Customs Enforcement, | |
| Peter Berg, Director, St. Paul Field Office, Immigration and Customs Enforcement, and | |
| Jason Kamerud, Sheriff, Carver County, | |
| Respondents. | |

Benjamin Casper Sanchez, Federal Immigration Litigation Clinic, University of Minnesota Law School, 190 Mondale Hall, 229 19th Avenue South, Minneapolis, MN 55455; John R. Bruning, Kim Hunter Law, PLLC, 656 Selby Avenue, Suite 100, St. Paul, MN 55104; Kathleen A. Moccio, 115 Valleyview Place, Minneapolis, MN 55419; and Michael D. Reif and Rajin Olson, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402 (for Petitioner); and

Ana H. Voss, Ann M. Bildtsen, and Pamela Marentette, Assistant United States Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondents Barr, McAleenan, Vitiello, and Berg).

## I. INTRODUCTION

This matter comes before the Court on Petitioner Abshir H. A.'s Emergency Motion for Temporary Restraining Order (ECF No. 10). This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Paul A. Magnuson, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.  (ECF No. 23.)

A hearing was held on May 2, 2019.  Attorney Benjamin Casper Sanchez and student attorneys Rachel Lochner and Paul Dimick appeared on behalf of Petitioner.  (*See* ECF Nos. 5, 24, 24-1.)  Assistant United States Attorney Pamela Marentette appeared on behalf of Respondents William Barr, Kevin McAleenan, Ronald D. Vitiello, and Peter Berg.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's motion be **DENIED**.

## II. BACKGROUND

Petitioner is a native and citizen of Somalia. (Pet. ¶¶ 11, 21, ECF No. 1; Decision & Order of the Immigration Judge ("IJ Decision") at 1, Mar. 25, 2019,[1] ECF No. 1-2.[2]) Petitioner entered the United States in 2005 as a refugee and, in 2008, became a lawful permanent resident.  (Pet. ¶¶ 11, 21; IJ Decision at 1.)

---

[1] *See infra* n.5.
[2] In the future, the Court strongly encourages both parties to file their exhibits individually rather than grouping several documents together in a single exhibit.

In 2010, Petitioner was convicted of aggravated first-degree witness tampering—a felony—in violation of Minn. Stat. § 609.498, subd. 1b(a)(1).[3] (Warrant of Commitment at 1, ECF No. 20-2; IJ Decision at 1.)

In February 2018, Immigration and Customs Enforcement ("ICE") arrested Petitioner and commenced removal proceedings based on his 2010 conviction. (Pet. ¶ 27; IJ Decision at 1; *see generally* Ex. A to Decl. of Christopher A. Campbell, ECF No. 20-1.) It is undisputed that Petitioner has been detained under the mandatory detention provisions of 8 U.S.C. § 1226(c) since that time. (Pet. ¶¶ 1, 2, 27; Pet'r's Mem. in Supp. at 5, 11, ECF No. 11; Resp'ts' Mem. in Opp'n at 2, 7-8, ECF No. 19.) *See, e.g.*, *Denmore v. Kim*, 538 U.S. 510, 517-18 (2003) ("Section 1226(c) mandates detention during removal proceedings for a limited class of deportable aliens—including those convicted of an aggravated felony."); *Ali v. Brott*, No. 19-1244, ___ F. App'x ____, 2019 WL 1748712, at *4 (8th Cir. Apr. 16, 2019) (noting "the Supreme Court has found unambiguous the language of § 1226(c), which requires mandatory detention until a decision regarding removal is reached").

From late February 2018 until March 2019, Petitioner has been in removal proceedings. (*See* Pet. ¶¶ 27, 29-31; Pet'r's Mem. in Supp. at 5-8; Decl. of Christopher A.

---

[3]
> A person is guilty of aggravated first-degree witness tampering if the person causes or, by means of an implicit or explicit credible threat, threatens to cause great bodily harm or death to another in the course of committing any of the following acts intentionally . . . (1) preventing or dissuading or attempting to prevent or dissuade a person who is or may become a witness from attending or testifying at any criminal trial or proceeding . . . .

Minn. Stat. § 609.498, subd. 1b(a).

3

Campbell ¶¶ 4-21, ECF No. 20.)  As part of these proceedings, Petitioner "admitted the factual allegations and conceded the charges of removability."  (IJ Decision at 2.)  The issue was whether Petitioner was eligible for a waiver under 8 U.S.C. § 1182(h)[4] based on hardship to his wife, a United States citizen, should his admission be denied.  (IJ Decision at 2.)  *See* 8 U.S.C. § 1182(h)(1)(B) (allowing for waiver of inadmissibility "in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States . . . if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen").

On March 25, 2019, the Immigration Judge found that Petitioner was eligible for a waiver under 8 U.S.C. § 1182(h) and granted Petitioner's application for adjustment of status.  (IJ Decision at 2-5.[5])  On April 2, 2019, ICE appealed the Immigration Judge's determination that Petitioner was eligible for a waiver under 8 U.S.C. § 1182(h) to the Board of Immigration Appeals.  (Notice of Appeal at 1-2, ECF No. 1-2.)  The appeal remains pending.

On April 15, 2019, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his ongoing detention.  (*See generally* Pet.)  Petitioner asserts that his continued detention under 8 U.S.C. § 1226(c) violates his right to due process under the Fifth Amendment and is in violation of the Eighth Amendment.

---

[4] Also referred to as a "212(h)" waiver based on § 212(h) of the Immigration and Nationality Act.
[5] The Immigration Judge initially issued a decision on March 4, 2019. (Decision & Order of the Immigration Judge, Mar. 4, 2019, ECF No. 1-2.)  Following an unopposed motion to correct a scrivener's error, the Immigration Judge entered a corrected order on March 25, 2019.  (*See* Mot. to Amend Decision & Order of the Immigration Judge, ECF No. 1-2; Resp. to Mot. to Amend Decision & Order of the Immigration Judge, ECF No. 1-2; Order of the Immigration Judge, ECF No. 1-2.)  The Court cites to the March 25, 2019 corrected order.

Petitioner requests that he be immediately released. In the alternative, Petitioner requests that he be released within 30 days unless Respondents secure a bond hearing before an Immigration Judge to determine whether detention should be continued.

The following day, April 16, 2019, Petitioner filed the instant motion for a temporary restraining order, seeking essentially the same relief—immediate release or a bond hearing before an Immigration Judge to determine whether detention should be continued.

### III. ANALYSIS

#### A. Legal Standard

A temporary restraining order may be issued without notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). A preliminary injunction may be issued "only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The same standard governs the issuance of temporary restraining orders and preliminary injunctions. *See, e.g.*, *ARRM v. Piper*, 319 F. Supp. 3d 1156, 1162 n. 2 (D. Minn. 2018); *C.S. McCrossan Constr., Inc. v. Minn. Dep't of Transp.*, 946 F. Supp. 2d 851, 857 n.10 (D. Minn. 2013). At the hearing, Petitioner suggested without opposition from Respondents that his motion was more properly characterized as a motion for a preliminary injunction. Because Respondents were on notice of Petitioner's motion and in fact have responded, the Court will treat Petitioner's motion as a motion for a preliminary injunction.

5

*See, e.g.*, *Ali v. Sessions*, No. 17-cv-5334 (PJS/KMM), 2017 WL 6205789, at *1 (D. Minn. Dec. 7, 2017); *C.S. McCrossan Constr.*, 946 F. Supp. 2d at 857 n.10.

"A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted); *see also Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). "[T]he 'purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (per curiam) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)); *accord Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) ("A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits."). Accordingly, "[t]he purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam) (citation omitted).

Whether the Court should issue a preliminary injunction "involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). "Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the

equities of a given case as the substance of the legal issues it presents." *Trump*, 137 S. Ct. at 2087; *see Dataphase Sys.*, 640 F.2d at 113 ("At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." (footnote omitted)). "[T]he burden on a movant to demonstrate that an injunction is warranted is heavier when granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits." *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 790 (8th Cir. 1989); *accord Brooks v. Roy*, 881 F. Supp. 2d 1034, 1049 (D. Minn. 2012) ("The burden is especially heavy where, as in this case, the moving party seeks not to maintain the status quo, but to obtain relief similar to that which it could obtain after a trial on the merits.").

"Following *Dataphase*, [the Eighth Circuit Court of Appeals] has repeatedly emphasized the importance of a showing of irreparable harm." *Caballo Coal Co. v. Ind. Mich. Power Co.*, 305 F.3d 796, 800 (8th Cir. 2002) (citing cases); *see also Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." (footnote omitted)). "[A] 'failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction.'" *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013) (quoting *Watkins Inc.*, 346 F.3d at 844); *accord Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1184 (8th Cir. 2019).

### B. Preliminary Injunctive Relief is Not Warranted Under the Circumstances

Petitioner asserts that without immediate relief, he will suffer irreparable injury, namely, "the unconstitutional deprivation of his liberty" and the inability to support his

wife and young son. (Pet'r's Mem. in Supp. at 1.) Petitioner acknowledges that "[t]o succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996)). As the district court has already observed in this case, however, Petitioner's motion "challenges the constitutionality of [his] ongoing detention but does not seek to prevent a forthcoming change in [his] status that may result in irreparable injury, which is the primary purpose of the judicial power to issue temporary injunctive relief." (Order at 1, Apr. 22, 2019, ECF No. 23.) This is not a situation where removal is impending. *See, e.g.*, *Ali*, 2017 WL 6205789, at *6 (enjoining and restraining pending removal until Board of Immigration Appeals issued decision on motion to reopen immigration proceedings).

Indeed, Petitioner's position is laid bare by his "conten[tion that] it was *never* reasonable for ICE to subject him to mandatory 1226(c) detention." (Pet'r's Mem. in Supp. at 11; *see also* Pet'r's Mem. in Supp. at 22 ("ICE's prolonged incarceration of [Petitioner] without bond is all the more unreasonable because ICE violated his due process rights from the moment it subjected him to mandatory detention on February 9, 2018.").) At the hearing, Petitioner reiterated that § 1226(c)'s mandatory detention should not have been applied to him. But, Petitioner was not without recourse if he believed he was not subject to mandatory detention under § 1226(c). As the Supreme Court observed in *Jennings v. Rodriguez*, "[a]nyone who believes that he is not covered by § 1226(c) may . . . ask for what is known as a '*Joseph* hearing.'" 138 S. Ct. 830, 838 n.1 (2018) (citing *Matter of*

8

*Joseph*, 22 I. & N. Dec. 799 (BIA 1999)). "At a *Joseph* hearing, that person 'may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [Government] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.'" *Id.* (alteration in original) (quoting *Denmore*, 538 U.S. at 514 n.3). The record shows that Petitioner appeared before an Immigration Judge no fewer than 12 times between his arrest in February 2018 and the Immigration Judge's decision in March 2019. (Campbell Decl. ¶¶ 4-7, 9-10, 12-15, 17-18.)

"The writ of habeas corpus is a procedural device for subjecting executive, judicial, or private restraints on liberty to judicial scrutiny." *Peyton v. Rowe*, 391 U.S. 54, 58 (1968) (footnotes omitted). At bottom, Petitioner is raising the same arguments and seeking the same relief in this motion as he is in his habeas petition. The fundamental injury Petitioner complains of—restraint of his liberty—and the essential inquiry required to address the alleged injury—the legality of Petitioner's continued restraint—strike at the very core of a writ of habeas corpus. *See, e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("It is clear, not only from the language of [§§] 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."); *Johnson v. Avery*, 393 U.S. 483, 485 (1969) ("[T]he basic purpose of the writ is to enable those unlawfully incarcerated to obtain their freedom."); *Heflin v. United States*, 358 U.S. 415, 421 (1959) (Stewart, J., concurring) ("The very office of the Great Writ, its only function, is to inquire into the legality of the

9

detention of one in custody."). As Respondents point out, "[i]f detention in and of itself constitutes irreparable harm justifying emergency and extraordinary relief, then many if not most habeas petitioners would be entitled to such relief." (Resp'ts' Mem. in Opp'n at 15.) Petitioner has not shown irreparable harm warranting extraordinary relief under the circumstances.

The Court recognizes, as best as it is able, the hardship Petitioner's young family has endured during his detention. The Court does not doubt for a moment that Petitioner's detention has resulted in tremendous stress and financial strain. Nor should it be lost that these proceedings have been emotionally taxing for everyone involved. But while Petitioner's separation from his family is understandably difficult, the challenges experienced by Petitioner and his family are, unfortunately, not unique and to a large extent shared among many individuals who are similarly detained and whose families and significant others likewise rely on them for support.

Additionally, "[i]n awarding a preliminary injunction, a court must also 'conside[r] . . . the overall public interest.'" *Trump*, 137 S. Ct. at 2087 (alteration in original) (quoting *Winter*, 555 U.S. at 26)); *cf. Benisek*, 138 S. Ct. at 1943-44 ("As a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits."); *Dataphase Sys.*, 640 F.2d at 113 ("The likelihood that plaintiff ultimately will prevail is meaningless in isolation. In every case, it must be examined in the context of the relative injuries to the parties and the public."). There is public interest in maintaining the status quo to allow the legal processes at work in this Court and elsewhere to run their course.

By enacting § 1226(c), Congress has determined that Petitioner is subject to mandatory detention based on his prior conviction. *See Denmore*, 538 U.S. at 517-21. The Supreme Court has ruled that § 1226(c) is constitutional. *Id.* at 513. Petitioner is being detained under that statute and there is no genuine dispute that Petitioner fits the basic requirements under that law. There is an ongoing appeal of whether Petitioner is eligible for a wavier under 8 U.S.C. § 1182(h). That is the status quo.

Petitioner is seeking to change that status quo by claiming that his detention is unconstitutional. The relief sought in the instant motion is essentially the same relief Petitioner seeks in his habeas petition and, for all practical purposes, is largely indistinguishable from the relief Petitioner hopes to obtain at the end of the pending appeal. For purposes of analysis for a preliminary injunction, Petitioner seeks to change the status quo, *and thus obtain expedited relief through this extraordinary remedy*. As strategically advantageous as that would be for Petitioner, it does not overcome the public interest in maintaining the status quo to permit the ordinary processes of the law to operate in the manner prescribed by law. This is true even where the opposing party ardently disagrees with the position being asserted on appeal or may ultimately prevail in that appeal. Moreover, if Petitioner believed he was not subject to mandatory detention under § 1226(c), he could have requested a *Joseph* hearing. *See Jennings*, 138 S. Ct. at 838 n.1; *Denmore*, 538 U.S. at 514 n.3.

Whether Petitioner's *continued* detention under § 1226(c) is constitutionally permissible is a matter that will be addressed—and no doubt vigorously litigated—in conjunction with his habeas petition. Considering the mandatory language of § 1226(c),

the developing nature of the law governing the length of such detentions,[6] and the fact that Petitioner seeks essentially the same relief here as he does in his habeas petition, the equities counsel in favor of allowing the habeas process to proceed in the ordinary fashion.

In sum, Petitioner has not met his burden to obtain the extraordinary relief of a preliminary injunction, and this matter shall proceed in the ordinary course of a habeas petition.

[Continued on next page.]

---

[6] *See, e.g.*, *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, No. 18-cv-1843 (NEB/ECW), ___ F. Supp. 3d ___, 2019 WL 1238834, at *3 (D. Minn. Mar. 18, 2019) ("[T]he Eighth Circuit has not addressed the issue of prolonged detention under § 1226(c) post-*Jennings*, but other courts have adopted a fact-based inquiry when determining whether detention is reasonable." (footnote omitted)); *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) ("There remains, however, a dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional."), *appeal filed*, No. 19-15582 (9th Cir. Mar. 28, 2019); *Misquitta v. Warden Pine Prairie ICE Processing Ctr.*, 353 F. Supp. 3d 518, 524-27 (W.D. La. 2018) (discussing post-*Jennings* jurisprudence), *appeal dismissed*, No. 18-31246 (5th Cir. Feb. 7, 2019); *Abdulkadir A. v. Sessions*, No. 18-cv-2353 (NEB/HB), 2018 WL 7048363, at *10 (D. Minn. Nov. 13, 2018) ("[T]he constitutionality of prolonged detentions under § 1226(c) remains an open question."), *adopting report and recommendation*, 2019 WL 201761 (D. Minn. Jan. 15, 2019).

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Emergency Motion for Temporary Restraining Order (ECF No. 10) be **DENIED**.

Date: May __6__, 2019                                    *s/ Tony N. Leung*
                                                        Tony N. Leung
                                                        United States Magistrate Judge
                                                        District of Minnesota

                                                        *Abshir H. A. v. Barr et al.*
                                                        Case No. 19-cv-1033 (PAM/TNL)

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).