# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Abshir H. A.,                                          Case No. 19-cv-1033 (PAM/TNL)

       Petitioner,

v.                                                          **REPORT &**
                                                        **RECOMMENDATION**

William Barr, U.S. Attorney General,

Kevin McAleenan, Acting Secretary,
Department of Homeland Security,

Ronald D. Vitiello, Acting Director,
Immigration and Customs Enforcement,

Peter Berg, Director, St. Paul Field Office,
Immigration and Customs Enforcement,
and

Jason Kamerud, Sheriff, Carver County,

       Respondents.

---

Benjamin Casper Sanchez, Federal Immigration Litigation Clinic, University of
Minnesota Law School, 190 Mondale Hall, 229 19th Avenue South, Minneapolis, MN
55455; John R. Bruning, Kim Hunter Law, PLLC, 656 Selby Avenue, Suite 100, St.
Paul, MN 55104; Kathleen A. Moccio, 115 Valleyview Place, Minneapolis, MN
55419; and Michael D. Reif and Rajin Olson, Robins Kaplan LLP, 800 LaSalle
Avenue, Suite 2800, Minneapolis, MN 55402 (for Petitioner); and

Ana H. Voss, Ann M. Bildtsen, and Pamela Marentette, Assistant United States
Attorneys, United States Attorney's Office, 300 South Fourth Street, Suite 600,
Minneapolis, MN 55415 (for Respondents Barr, McAleenan, Vitiello, and Berg).

# I. INTRODUCTION

This matter comes before the Court on Petitioner Abshir H. A.'s Petition for Writ of Habeas Corpus ("Petition") (ECF No. 1) under 28 U.S.C. § 2241. The Petition has been referred to the undersigned for a report and recommendation to the district court, the Honorable Paul A. Magnuson, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. (ECF No. 23.)

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition be **GRANTED IN PART** and **DENIED IN PART** as set forth below.

# II. BACKGROUND[1]

Petitioner is a native and citizen of Somalia. (Pet. ¶¶ 11, 21, ECF No. 1; Decision & Order of the Immigration Judge ("IJ Decision") at 1, Mar. 25, 2019,[2] ECF No. 1-2.) Petitioner entered the United States in 2005 as a refugee and, in 2008, became a lawful permanent resident. (Pet. ¶¶ 11, 21; IJ Decision at 1.)

In 2010, Petitioner was convicted of aggravated first-degree witness tampering—a felony—in violation of Minn. Stat. § 609.498, subd. 1b(a)(1).[3] (Warrant of Commitment at 1, ECF No. 20-2; IJ Decision at 1.)

---

[1] The Court previously set forth the facts of this matter in a Report & Recommendation dated May 6, 2019. (ECF No. 36.)

[2] *See infra* n.5.

[3]

> A person is guilty of aggravated first-degree witness tampering if the person causes or, by means of an implicit or explicit credible threat, threatens to cause great bodily harm or death to another in the course of committing any of the following acts intentionally . . . (1) preventing or dissuading or attempting to prevent or dissuade a person who is or may become a witness from attending or

In February 2018, Immigration and Customs Enforcement ("the government") arrested Petitioner and commenced removal proceedings based on his 2010 conviction. (Pet. ¶ 27; IJ Decision at 1; *see generally* Ex. A to Decl. of Christopher A. Campbell, ECF No. 20-1.)  It is undisputed that Petitioner has been detained under the mandatory detention provisions of 8 U.S.C. § 1226(c) since that time.  (Pet. ¶¶ 1, 2, 27; Resp. to Pet. at 1, ECF No. 38.)

From late February 2018 until March 2019, Petitioner has been in removal proceedings.  (*See* Pet. ¶¶ 27, 29-31; Decl. of Christopher A. Campbell ¶¶ 4-21, ECF No. 20.)  As part of these proceedings, Petitioner "admitted the factual allegations and conceded the charges of removability."  (IJ Decision at 2.)  The issue was whether Petitioner was eligible for a waiver under 8 U.S.C. § 1182(h)[4] based on hardship to his wife, a United States citizen, should his admission be denied.  (IJ Decision at 2.)  *See* 8 U.S.C. § 1182(h)(1)(B) (allowing for waiver of inadmissibility "in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States . . . if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen").

On March 25, 2019, the Immigration Judge found that Petitioner was eligible for a § 1182(h) waiver and granted Petitioner's application for adjustment of status.  (IJ Decision

---

testifying at any criminal trial or proceeding . . . .

Minn. Stat. § 609.498, subd. 1b(a).
[4] Also referred to as a "212(h)" waiver based on § 212(h) of the Immigration and Nationality Act.

at 2-5.[5])    On April 2, 2019, the government appealed the Immigration Judge's determination that Petitioner was eligible for a § 1182(h) waiver to the Board of Immigration Appeals ("BIA").    (Notice of Appeal at 1-2, ECF No. 1-2.)    The appeal remains pending.

On April 15, 2019, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his ongoing detention.    (*See generally* Pet.)    Petitioner asserts that his continued detention under 8 U.S.C. § 1226(c) violates his right to due process under the Fifth Amendment and is in violation of the Eighth Amendment. Petitioner requests that he be immediately released.    In the alternative, Petitioner requests that he be released within 30 days unless Respondents secure a bond hearing before an Immigration Judge to determine whether his detention should continue.

### III. ANALYSIS

"A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release."    *Abdulkadir A. v. Sessions*, No. 18-cv-2353 (NEB/HB), 2018 WL 7048363, at *2 (D. Minn. Nov. 13, 2018) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973)), *accepting report and recommendation*, 2019 WL 201761 (D. Minn. Jan. 15, 2019).    Federal courts have jurisdiction to hear habeas challenges to the lawfulness of immigration-related detentions

---

[5] The Immigration Judge initially issued a decision on March 4, 2019.  (Decision & Order of the Immigration Judge, Mar. 4, 2019, ECF No. 1-2.)  Following an unopposed motion to correct a scrivener's error, the Immigration Judge entered a corrected order on March 25, 2019.  (*See* Mot. to Amend Decision & Order of the Immigration Judge, ECF No. 1-2; Resp. to Mot. to Amend Decision & Order of the Immigration Judge, ECF No. 1-2; Order of the Immigration Judge, ECF No. 1-2.)  The Court cites to the March 25, 2019 corrected order.

under 28 U.S.C. § 2241.  *Denmore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### A.  Fifth Amendment Due Process

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that Clause protects."  *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993); *accord Denmore*, 538 U.S. at 523.

### 1.  § 1226(c) Detention

Petitioner is being detained under 8 U.S.C. § 1226(c), which mandates that certain criminal aliens be taken into custody during removal proceedings.  *Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018); *Denmore*, 538 U.S. at 517-18, 527-28.  "In *Denmore*, the Supreme Court held that the government may, consistent with the Due Process Clause, detain removable aliens under § 1226(c) for the 'brief period necessary' for removal proceedings to run their course."  *Muse v. Sessions*, No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052, at *2 (D. Minn. Sept. 18, 2018) (quoting 538 U.S. at 513); *see also, e.g.*, *Bolus A. D. v. Sec'y of Homeland Sec.*, No. 18-cv-1557 (WMW/KMM), ___ F. Supp. 3d ____, 2019 WL 1895059, at *1 (D. Minn. Apr. 29, 2019) ("Mandatory detention pursuant to 8 U.S.C. § 1226(c) does not violate a detainee's Fifth Amendment due process rights during the 'brief period necessary' for removal proceedings."); *Liban M. J. v. Sec'y of Dep't of*

*Homeland Sec.*, 367 F. Supp. 3d 959, 962 (D. Minn. 2019) ("The Supreme Court has held that detention under § 1226(c) is consistent with the Due Process Clause for the 'brief period necessary' required [sic] to complete removal proceedings.").

"Constitutional difficulties arise, however, when detention under § 1226(c) ceases to be 'brief.'" *Muse*, 2018 WL 4466052, at *2; *see also, e.g.*, *Bolus A. D.*, 2019 WL 1895059, at *2; *Liban M. J.*, 367 F. Supp. 3d at 962. In *Zadvydas*, the Supreme Court cautioned that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690; *see Muse*, 2018 WL 4466052, at *2.

## 2. *Jennings v. Rodriguez*

Prior to the Supreme Court's decision in *Jennings*, "several federal courts of appeals—citing the canon of constitutional avoidance—construed § 1226(c) to include a reasonableness limitation on the length of time that an alien could be detained." *Muse*, 2018 WL 4466052, at *2 (collecting cases); *see Mohamed v. Sec'y Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS) 2018 U.S. Dist. LEXIS 88643, at *5 (D. Minn. Mar. 23, 2018), *adopting report and recommendation*, 2018 U.S. Dist. LEXIS 88169 (D. Minn. May 25, 2018). The First, Third, Sixth, and Eleventh Circuits "adopted a fact-dependent reasonableness standard for judging whether the period of detention ha[d] exceeded this permissible duration." *Mohamed*, 2018 U.S. Dist. LEXIS 88643, at *5; *see also Abdulkadir A.*, 2018 WL 7048363, at *10; *see, e.g.*, *Reid v. Donelan*, 819 F.3d 486, 500-01 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993, at *1 (1st Cir. May 11, 2018); *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 473-78 (3d Cir. 2015), *abrogation recognized by Guerrero-Sanchez v.*

6

*Warden York Cty. Prison*, 905 F.3d 208, 221 (3d Cir. 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233-35 (3d Cir. 2011), *overruling recognized in Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018); *Ly v. Hansen*, 351 F.3d 263, 271-73 (6th Cir. 2003); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1214-19 (11th Cir. 2016), *vacated*, *Sopo v. U.S. Att'y Gen.*, 890 F.3d 952, 953-54 (11th Cir. 2018). "The Second and Ninth Circuits . . . adopted a bright-line rule, requiring a specific finding of flight risk or danger to the community to justify any pre-removal detention exceeding six months." *Mohamed*, 2018 U.S. Dist. LEXIS 88643, at \*5; *see also Abdulkadir A.*, 2018 WL 7048363, at \*10; *see, e.g.*, *Lora v. Shanahan*, 804 F.3d 601, 613-16 (2d Cir. 2015), *cert. granted and judgment vacated*, *Shanahan v. Lora*, 138 S. Ct. 1260 (2018); *Rodriguez v. Robbins*, 804 F.3d 1060, 1077-81 (9th Cir. 2015), *reversed*, *Jennings v. Rodriguez*, 138 S. Ct. 830; *Rodriguez v. Robbins*, 715 F.3d 1127, 1136-39 (9th Cir. 2013).

*Jennings* rejected the use of statutory interpretation to graft a reasonableness limitation onto § 1226(c). 138 S. Ct. at 842, 846-47; *see Muse*, 2018 WL 4466052, at \*2. In *Jennings*, the Supreme Court observed that although "§ 1226(c) does not on its face limit the length of the detention it authorizes," it "is *not* 'silent' as to the length of detention." 138 S. Ct. at 846. Section 1226(c) "mandates detention pending a decision on whether the alien is to be removed from the United States, and it expressly prohibits release from that detention except for narrow, witness-protection purposes." *Id.* (quotation and citation omitted); *see Ali v. Brott*, No. 19-1244, ___ F. App'x ____, 2019 WL 1748712, at \*3 (8th Cir. Apr. 16, 2019). Because "§ 1226(c) makes clear that detention of aliens within its scope *must* continue pending a decision on whether the alien is to be removed from the

7

United States," statutory interpretation could not be used to alter its terms. *Jennings*, 138 S. Ct. at 846-47 (quotation omitted); *see Ali*, 2019 WL 1748712, at *4; *Muse*, 2018 WL 4466052, at *2. *Jennings*, however, did not address the accompanying constitutional due process questions and remanded them for consideration by the appellate court in the first instance. 138 S. Ct. at 839, 851; *see Tao J. v. Sec'y of Dep't of Homeland Sec.*, No. 18-cv-1845 (NEB/HB), 2019 WL 1923110, at *2 (D. Minn. Apr. 30, 2019) ("*Jennings* did not address whether, at a certain point, prolonged detention implicates the Due Process Clause."); *Muse*, 2018 WL 4466052, at *2 ("The [*Jennings*] Court expressed no view on the constitutional question that the lower courts had tried to avoid: What limitations does the Due Process Clause place on detention under § 1226(c)?").

### 3.  Evaluating § 1226(c) Detention After *Jennings*

#### a.  *Muse* Factors

Following *Jennings*, courts in this District have "h[eld] that a due-process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable." *Muse*, 2018 WL 4466052, at *3; *see Mohamed*, 2018 U.S. Dist. LEXIS 88643, at *12-15; *see, e.g.*, *Tao J.*, 2019 WL 1923110, at *3-4; *Bolus A. D.*, 2019 WL 1895059, at *2-3; *Liban M. J.*, 367 F. Supp. 3d at 963-65; *Abdulkadir A.*, 2018 WL 7048363, at *11-13. Several factors are considered "in identifying the point at which continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent

with the law's purposes of preventing flight and dangers to the community." *Muse*, 2018 WL 4466052, at *3 (quotation omitted). These factors include:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.*[6]

Respondents contend that instead of considering these factors, "this Court should join the district courts that have held, post-*Jennings*, that § 1226(c) detention where the case is proceeding efficiently through the immigration courts, and the government has not caused unreasonable delay, 'has not yet become so prolonged that it amounts to an arbitrary application of the statute.'" (Resp. to Pet. at 17 (quoting *Vukosavljevic v. Low*, No. 3:18-cv-1235, 2018 WL 6706691, at *2 (M.D. Penn. Dec. 20, 2018)). Respondents rely on a handful of cases from the District of New Jersey and the Middle District of Pennsylvania, district courts located within the Third Circuit.

First, Respondents' argument that continued § 1226(c) detention is reasonable so long as the removal case is proceeding efficiently and the government has not caused unreasonable delay has been rejected by a number of judges in this District as being

---

[6] These factors are based on *Reid*, 819 F.3d at 500-01, which was decided prior to *Jennings*. The First Circuit Court of Appeals has since withdrawn *Reid*. 2018 WL 4000993. Acknowledging that *Reid* was withdrawn after *Jennings*, *Muse* found that these "factors 'represent a reasonable framework for balancing the due process interests at stake' even though they were 'originally adopted in the context of reading an implicit reasonableness limitation into § 1226(c).'" 2018 WL 4466052, at *3 n.3 (quoting *Portillo v. Hott*, No. 1:18-470, 2018 WL 3237898, at *7-9 (E. D. Va. July 3, 2018)); *accord Tao J.*, 2019 WL 1923110, at *3 n.3; *Bolus A. D.*, 2019 WL 1895059, at *2 n.2; *Liban M. J.*, 367 F. Supp. 3d at 963 n.3; *see Abdulkadir A.*, 2018 WL 7048363, at *11 n.3; *Mohamed*, 2018 U.S. Dist. LEXIS 88643, at *13.

inconsistent "with the Supreme Court's reasoning in *Denmore*" and *Denmore*'s "repeated references to the brevity of detention under § 1226(c)" in upholding its constitutionality. *Muse*, 2018 4466052 at *3; *see Liban M. J.*, 367 F. Supp. 3d at 963 ("This argument fails to address that the Supreme Court limited its *Denmore* holding to a brief period of detention under § 1226(c).")*; see also Tao J.*, 2019 WL 1923110, at *2 (same); *Bolus A. D.*, 2019 WL 1895059, at *2 ("[T]his Court joins those that have relied on *Denmore*'s repeated references to the brevity of detention under § 1226(c) to conclude that prolonged detention without an individualized bond hearing may violate a detainee's right to due process." (quotation omitted)).

Second, while the cases cited by Respondents do not employ a factor-based analysis, they nevertheless recognize that "the 'constitutionality of [detention pursuant to § 1226(c) without a bond hearing] is a function of the length of the detention" and proceed from the same fundamental premise that the reasonableness of § 1226(c) detention is a fact-specific inquiry. *Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D. N.J. 2018) (alteration in original) (quoting *Chavez-Alvarez*, 783 F.3d at 474); *see Carlos A. v. Green*, Civil Action No. 18-741 (SDW), 2018 WL 3492150, at *2-5 (D. N.J. July 20, 2018) (applying *Dryden*); *see also Fernandez v. Lowe*, No. 3:17-CV-2301, 2018 WL 3584697, at *4-5 (M.D. Penn. July 26, 2018) (relying on *Carlos A.*); *cf. Vukosavljevic*, 2018 WL 6706691, at *2 (citing to *Dryden*, *Carlos A.*, and *Fernandez* among others).

These decisions acknowledge that, prior to *Jennings*, § 1226(c) detentions "bec[a]me suspect between six months and a year" based on then-existing Third Circuit precedent in *Diop* and *Chavez-Alvarez*. *Dryden*, 321 F. Supp. 3d at 502; *id.* at 499-500;

*see Fernandez*, 2018 WL 3584697, at *4; *Carlos A.*, 2018 WL 3492150, at *4; *see also Vukosavljevic*, 2018 WL 6706691, at *2. In the wake of *Jennings*, these courts have looked beyond the length of detention to the facts of the underlying proceedings and their progression, considering, for example, whether the delay was attributable to the alien, whether there was apparent inaction or unreasonable delay by the government, and the stage of the proceedings as well as any appeals. *Vukosavljevic*, 2018 WL 6706691, at *2; *Fernandez*, 2018 WL 3584697, at *4-5; *Carlos A.*, 2018 WL 3492150, at *5; *Dryden*, 321 F. Supp. 3d at 502-03; *see Borbot*, 906 F.3d at 278 ("The Supreme Court recently overruled *Diop*'s interpretation of 8 U.S.C. § 1226(c). In *Jennings v. Rodriguez*, the Court rejected our conclusion that § 1226(c) contains an implicit reasonableness limitation. . . . *Jennings* did not, however, address the constitutionality of § 1226(c), instead remanding to the Ninth Circuit to decide that question in the first instance. Accordingly, *Jennings* did not call into question our constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long." (citations omitted)).

The factor-based approach employed by courts in this District is directed at the same inquiry: at what point does continued detention under § 1226(c) become unreasonable? These factors largely mirror the considerations of the courts in *Dryden*, *Carlos A.*, *Fernandez*, and *Vukosavljevic*. In applying these factors, particularly the second, fourth, and fifth factors, the Court is considering the length of Petitioner's detention in the overall context of the underlying immigration case and its progression. Therefore, the Court concludes that the *Muse* factors should be applied to evaluate Petitioner's as-applied challenge to his continued detention under § 1226(c).

11

### b.  Application of *Muse* Factors

### i.    First Factor: Length of Detention to Date

The first factor is the length of detention to date.  *Muse*, 2018 WL 4466052, at *4.
The length of detention "is critical to the due-process inquiry."  *Id.*  "[T]he longer detention
persists, the more difficult it is for the government to justify continued detention."  *Bolus
A. D.*, 2019 WL 1895059, at *2.  "Continued detention without inquiry into its necessity
becomes more and more suspect as detention continues past the time frame described in
*Denmore*."  *Abdulkadir A.*, 2018 WL 7048363, at *12 (quotation omitted); *see Liban M.
J.*, 367 F. Supp. 3d at 963 ("This inquiry contemplates how long the deprivation [of liberty]
has lasted and is critical of detention that can no longer be categorized as brief." (quotation
omitted)).  "*Denmore* expressed the understanding that detention under § 1226(c) would
be brief, and this assumption was key to the [Supreme] Court's conclusion that the law
complied with due process."  *Muse*, 2018 WL 4466052, at *4 (quotation omitted); *see
Denmore*, 538 U.S. at 528-31.

Petitioner has been detained for more than 16 months.  Under existing case law in
this District and elsewhere, the length of Petitioner's detention weighs in his favor.  *See
Tao J.*, 2019 WL 1923110, at *3 (approximately 14.5 months); *Bolus A. D.*, 2019 WL
1895059, at *2 (more than 16 months); *Liban M. J.*, 367 F. Supp. 3d at 963 (approximately
12 months); *Abdulkadir A.*, 2018 WL 7048363, at *12 (9 months); *Muse*, 2018 WL
4466052, at *4 (over 14 months); *Mohamed*, 2018 U.S. Dist. LEXIS 88643, at *13 (over
15 months); *see also Doe v. Beth*, No. 18-C-1672, 2019 WL 1923867, at *4 (E.D. Wis.

Apr. 29, 2019) (listing cases granting individualized bond hearings for detentions lasting between 7 and 48 months).

While Respondents direct the Court to *Dryden*, *Carlos A.*, *Fernandez*, and *Vukosavljevic*, Petitioner's detention is longer than the detentions challenged in each of those cases. *See Vukosavljevic*, 2018 WL 6706691, at *2 (just over a year); *Fernandez*, 2018 WL 3584697, at *4 (approximately 15 months); *Carlos A.*, 2018 WL 3492150, at *5 (just over a year); *Dryden*, 321 F. Supp. 3d at 502 (just over a year). Further, more recent case law from one of those districts, the District of New Jersey, likewise suggests that the length of Petitioner's detention without a bond hearing has reached the outer limits. *See, e.g.*, *Oscar B. v. Warden, Essex Cty. Corr. Facility*, Civ. No. 18-11524 (KM), 2019 WL 1569822, at *3 (D. N.J. Apr. 10, 2019) (over 16 months); *De Oliveira Viegas v. Green*, 370 F. Supp. 3d 443, 449 (D. N.J. 2019) (over 15 months). *But see Selvin M. R. v. Green*, Civil Action No. 18-14058 (JLL), 2019 WL 981651, at *3 (D. N. J. Feb. 27, 2019) (14 months). "Although there is no bright-line rule for what constitutes a reasonable length of detention, Petitioner's detention has lasted beyond the 'brief' period assumed in *Denmore*." *Liban M. J.*, 367 F. Supp. 3d at 963-64 (citing 538 U.S. at 526, 529).

### ii.    Second Factor: Likely Duration of Future Detention

The second factor is the likely duration of future detention, "consider[ing] how long the detention is likely to continue in the absence of judicial relief." *Muse*, 2018 WL 4466052, at *5. In doing so, "courts consider the anticipated duration of the entire judicial and administrative process." *Bolus A. D.*, 2019 WL 1895059, at *2; *see Muse*, 2018 WL 4466052, at *5. Respondents contend that consideration of this factor and the sixth factor

(likelihood the proceedings will result in a final order of removal) "necessarily requires [the Court to] opin[e] on the merits of the litigants' positions in immigration court, despite the fact that there is no jurisdiction for [a] district court to rule on the merits of removal proceedings." (Resp. to Pet. at 16.)    Respondents further contend that "any prediction of the remaining length of proceedings or their final outcome is highly speculative." (Resp. to Pet. at 17.)

While the Court agrees that it is not in a position to speculate on the merits of the pending appeal, *see infra* Section III.A.3.b.v, it is more than plausible and in fact likely that Petitioner's detention will continue for several more months absent judicial intervention. There is no final order of removal. Although Petitioner conceded removability, he received a waiver of inadmissibility and an adjustment of status, allowing him to remain in the United States. *See Nhean v. Brott*, No. 17-cv-28 (PAM/FLN), 2017 WL 5054390, at *1 (D. Minn. Aug. 7, 2017) ("Having received a waiver of inadmissibility, Nhean is no longer presumptively deportable or inadmissible, and absent special circumstances, he may not be detained indefinitely."). The government appealed the Immigration Judge's determination that Petitioner is eligible for a § 1182(h) waiver in early April and it is estimated that the BIA will issue its decision within four to six months from filing. (Decl. of Richard N. Pryd, Jr. ¶ 10, ECF No. 39.) True, "it is impossible to know when the BIA will rule on that appeal." *Tao J.*, 2019 WL 1923110, at *3. But even by conservative estimates, Petitioner may well continue to be detained for a significant period of time pending a ruling from the BIA, let alone any subsequent appeals. *See id.*; *see also*

*Bolus A. D.*, 2019 WL 1895059, at *2; *Abdulkadir A.*, 2018 WL 7048363, at *12. Therefore, this factor likewise favors Petitioner.

### iii.    Third Factor: Conditions of Detention

The third factor is the conditions of detention.  *Muse*, 2018 WL 4466052, at *5. "Aliens held under § 1226(c) are subject to civil detention rather than criminal incarceration."  *Id.*  "Whether the conditions of civil immigration detention are meaningfully different from those of criminal detention factors into the reasonableness of Petitioner's detention." *Liban M. J.*, 367 F. Supp. 3d at 964; *accord Tao J.*, 2019 WL 1923110, at *4.  "The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at *5.  Further, "the weight of this factor increases with the length of detention." *Bolus A. D.*, 2019 WL 1895059, at *3; *accord Muse*, 2018 WL 4466052, at *5.

Respondents do not dispute that Petitioner is being detained at a criminal corrections facility.  Petitioner is currently confined in the Carver County Jail.  (Pet. ¶ 50.)  Petitioner is being "detained alongside inmates who are serving criminal sentences and awaiting criminal trials."  (Pet. ¶ 50.)  Petitioner's "only communication with his family is through time-limited and expensive phone or video calls" and a glass partition separates Petitioner from his family when they visit.  (Pet. ¶ 50; *see* Ex. D to Pet. at Habeas TRO 39-41, ECF No. 1-2.)  The conditions of Petitioner's detention are difficult to distinguish from those in criminal incarceration.  *See Bolus A. D.*, 2019 WL 1895059, at *3 (confinement "in a corrections facility with inmates who are either serving criminal sentences or awaiting

15

criminal trials" is "indistinguishable from criminal incarceration"); *Muse*, 2018 WL 4466052, at *5 (confinement "in a county jail alongside inmates who are serving criminal sentences" is "indistinguishable from penal confinement"). These conditions coupled with the length of Petitioner's detention result in this factor also weighing in Petitioner's favor. *See Bolus A. D.*, 2019 WL 1895059, at *3; *see also Tao J.*, 2019 WL 1923110, at *4 (criminal correctional facility); *Liban M. J.*, 367 F. Supp. 3d at 964 (criminal correctional facility); *Abdulkadir A.*, 2018 WL 7048363, at *12 (county jail); *Muse*, 2018 WL 4466052, at *5 (county jail).

### iv.    Fourth & Fifth Factors: Delays in the Immigration Proceedings

The fourth and fifth factors consider any delays in the immigration proceedings caused by Petitioner and the government. *See Muse*, 2018 WL 4466052, at *5-6. Here, these factors weigh equally to the parties and essentially neutralize one another. The parties have not accused each other of engaging in dilatory tactics. The record reflects that there have been a handful of continuances in the underlying removal proceedings, including two sought by Petitioner while an I-130 form, petition for an alien relative, remained pending. (*See* Resp. to Pet. at 3; Campbell Decl. ¶¶ 6, 8-9, 14, 17.) None of these continuances were requested by the government. "An alien should not be punished for raising legitimate defenses to removal." *Muse*, 2018 WL 4466052, at *5. The non-frivolousness of Petitioner's arguments in the removal proceedings is evidenced by the Immigration Judge's decision to grant Petitioner a § 1182(h) waiver and an adjustment of status. *See id.* Conversely, while Petitioner does not agree with the government's position on appeal, the

government is within its rights to appeal to the BIA. *See Abdulkadir A.*, 2018 WL 7048363, at *12. Each party has the right to advance substantive arguments in support of its position throughout the process. *See, e.g.*, *Bolus A. D.*, 2019 WL 1895059, at *3; *Liban M. J.*, 367 F. Supp. 3d at 965; *Muse*, 2018 WL 4466052, at *5-6.

### v.    Sixth Factor: Likelihood of a Final Removal Order

The sixth and final factor is "the likelihood that the proceedings will culminate in a final removal order." *Muse*, 2018 WL 4466052, at *6. "The more likely that the alien will be removed, the longer the detention that will be deemed reasonable." *Id.* As stated above, Respondents argue that this factor encourages the Court to "opin[e] on the merits of the litigants' positions in the immigration court, despite the fact that there is no jurisdiction for the district court to rule on the merits of removal proceedings." (Resp. to Pet. at 16-17.) Petitioner asks not that this Court "decide the substance of [the government's] appeal," but "appreciate that [the government] faces a very steep uphill battle" on its argument that Petitioner is not eligible for a § 1182(h) waiver. (Pet. ¶ 52.)

Petitioner prevailed in the underlying removal proceedings. *See Nhean*, 2017 WL 5054390, at *1. There is no final removal order. The Immigration Judge determined that Petitioner, an alien who obtained lawful permanent resident status after being admitted to the United States as a refugee, was eligible for a § 1182(h) waiver. The eligibility issue has led to a split among the circuit courts of appeal. *See, e.g.*, *Medina-Rosales v. Holder*, 778 F.3d 1140, 1144 (10th Cir. 2015) ("Eight circuits—the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh—have held that [§ 1182(h)'s] language clearly and unambiguously precludes eligibility for a waiver after conviction of an aggravated felony

only if the alien received [lawful permanent resident] status at the time the alien lawfully entered the United States, but it does not apply to an alien who obtained [lawful permanent resident] status after having been present in the United States before acquiring that status. The Eighth Circuit disagrees." (citations omitted)); *see also Marques v. Lynch*, 834 F.3d 549, 560 (5th Cir. 2016) ("Nearly every circuit to address this issue agreed with the [lawful permanent residents] who had adjusted their status." (footnote omitted)); *Matter of J-H-J-*, 26 I. & N. Dec. 563, 564 (BIA 2015) ("[N]ine circuit courts have held that the plain language of section 212(h) of the Act precludes aliens from establishing eligibility for relief *only* if they lawfully entered the United States as permanent residents and thereafter committed an aggravated felony." (citing cases)).

      The Eighth Circuit Court of Appeals has described § 1182(h) as "ambiguous" and "susceptible to multiple interpretations," and has held that "§ 1182(h) relief is unavailable for any alien who has been convicted of an aggravated felony after acquiring lawful permanent resident status, without regard to the manner in which such status was acquired" based on then-existing decisions of the BIA. *Roberts v. Holder*, 745 F.3d 928, 932-33 (8th Cir. 2014) (per curiam) (quotation omitted); *cf. Spacek v. Holder*, 688 F.3d 536, 539 (8th Cir. 2012). Subsequent to the Eighth Circuit's opinions in *Spacek* and *Roberts*, the BIA appears to have reversed course on its interpretation of § 1182(h) based on "'overwhelming circuit authority' opposing its view." *Marques*, 834 F.3d at 560 (quoting *J-H-J-*, 26 I. & N. Dec. at 564); *see J-H-J-*, 26 I. & N. Dec. at 564 ("[W]e will now accede to the clear majority view of these nine circuits."); *see also In re: Gennadiy Zheleznyak*, No. AXXX-XX0-953, 2018 WL 7435853, at *3 n.3 (BIA Oct. 29, 2018).

As Petitioner points out, judges in this District have declined to speculate on the outcome of pending appeals and "most often evaluate[] th[is] factor to be neutral." (Pet'r's Reply at 4, ECF No. 41.) *See, e.g.*, *Tao J.*, 2019 WL 1923110, at *4 ("The Court agrees it is not in the position to weigh the merits of the removal order and thus finds this factor to be neutral. The Court cannot predict what will occur with DHS's appeal to the BIA, and thus does not have a sufficient basis to determine whether Petitioner will likely be removed."); *Bolus A. D.*, 2019 WL 1895059, at *3 ("[A]s the Court is not in a position to weigh the merits of either the government's grounds for removal or B.D.'s appeal, this factor is neutral."); *Abdulkadir A.*, 2018 WL 7048363, at *12 ("This Court is not inclined to speculate about the merits of the arguments before the BIA or the BIA's ruling."). This Court is similarly disinclined to speculate on the merits of the government's appeal or the BIA's ruling.

###### vi.    Balance of *Muse* Factors

In sum, three of the factors weigh in Petitioner's favor and the remainder are, for all practical purposes, neutral. Accordingly, the Court finds that continuing to detain Petitioner without affording him a bond hearing would violate his right to due process under the Fifth Amendment, and therefore recommends that the Petition be granted in part.[7] *See Tao J.*, 2019 WL 1923110, at *4; *Bolus A. D.*, 2019 WL 1895059, at *3; *Liban M. J.*, 367 F. Supp. 3d at 965; *Abdulkadir A.*, 2018 WL 7048363, at *13; *Muse*, 2018 WL

---

[7] Because the Court recommends that Petitioner be afforded habeas relief on the ground that his continued detention without a bond hearing violates his right to due process, the Court declines to address Petitioner's second due process argument, namely, that the imposition of an irrebuttable presumption of flight risk and danger onto a noncitizen who has a substantial challenge to removal violates due process. (*See* Pet. ¶ 8 ("Either of Mr. A[.]'s due process arguments independently justifies an order granting habeas relief."); *see also* Pet. ¶¶ 7, 57-59, 68.)

4466052, at *6; *Mohamed*, 2018 U.S. Dist. LEXIS 88643, at *15-16; *see also Nhean*, 2017 WL 5054390, at *1.

### 4. Bond Hearing Procedures

Petitioner requests that this Court mandate both that the government bear the burden of proof at any bond hearing to show that detention is necessary to protect the community or to prevent him from fleeing, and that the standard of proof be clear and convincing evidence. Respondents contend that Petitioner should bear the burden of proof.

There is an absence of controlling authority on the applicable standard of proof and who is to bear it at a bond hearing to address continued detention under § 1226(c) once an as-applied challenge has been sustained. *See Bolus A. D.*, 2019 WL 1895059, at *3; *cf. Bolus A. D. v. Sec'y of Homeland Sec.*, No. 18-cv-1557 (WMW/KMM) 2019 WL 1905848, at *6 (D. Minn. Feb. 11, 2019), *adopting report and recommendation as modified*, 2019 WL 1895059. To date, orders granting bond hearings to habeas petitioners challenging the constitutionality of their continued detention under § 1226(c) in this District have not answered the question. *See Bolus A. D.*, 2019 WL 1895059, at *3; *Muse*, 2018 WL 4466052, at *6; *see also Tao J.*, 2019 WL 1923110, at *5; *Liban M. J.*, 367 F. Supp. 3d at 966; *Abdulkadir A.*, 2019 WL 201761, at *1; *Mohamed*, 2018 U.S. Dist. LEXIS 88169, at *3-4; *cf. Melie I. v. McAleenan*, No. 18-cv-1657 (ECT/HB), 2019 U.S. Dist. LEXIS 94236, at *9-11 (D. Minn. June 5, 2019); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860-61 & n.6 (D. Minn. 2019).

The Court recognizes that Petitioner's argument is not without support. *See, e.g., Campbell v. Barr*, No. 19-CV-341, 2019 WL 2106387, at *8-9 (W.D. N.Y. May 14, 2019);

*Obando-Segura v. Whitaker*, No. GLR-17-3190, 2019 WL 423412, at *3-5 (D. Md. Feb. 1, 2019); *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 WL 330906, at *6-7 (N.D. Cal. Jan. 25, 2019), *appeal filed*, No. 19-15582 (9th Cir. Mar. 28, 2019); *Hechavarria v. Sessions*, No. 15-CV-1058, 2018 WL 5776421, at *8-9 (W.D. N.Y. Nov. 2, 2018); *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *10-11 (S.D. N.Y. July 25, 2018); *see also De Oliveira Viegas*, 370 F. Supp. 3d at 449; *cf. Bolus A. D.*, 2019 WL 1905848, at *5-6; *Melie I. v. Sec'y of Homeland Sec.*, No. 18-cv-1657 (ECT/HB), 2019 U.S. Dist. LEXIS 95338, at *10-19 (D. Minn. Jan. 7, 2019) (discussing burden of proof at a bond hearing for discretionary detention under 8 U.S.C. § 1226(a)), *adopted in part and rejected in part*, *Melie I. v. McAleenan*, 2019 U.S. Dist. LEXIS 94236.

Nevertheless, this Court concurs that these issues are most appropriately deferred to the Immigration Judge, and therefore recommends that determinations as to the applicable standard of proof and who is to bear it be left to the Immigration Judge in the first instance. *See Bolus A. D.*, 2019 WL 1895059, at *3; *Muse*, 2018 WL 4466052, at *6; *see also Jamal A.*, 358 F. Supp. 3d at 860 n.6.

### B. Eighth Amendment Excessive Bail

Petitioner also contends that "the categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment," (Pet. ¶ 72), and therefore his "ongoing prolonged detention without a bond hearing violates the Eighth Amendment," (Pet. ¶ 73). Because the Court has concluded that due process under the Fifth Amendment requires Petitioner to receive a bond hearing and Petitioner has not argued that he is entitled to any broader relief under the Eighth Amendment, Petitioner's Eighth Amendment claim

is moot. *Campbell*, 2019 WL 2106387, at *9 ("But because this Court has determined that due process requires that Campbell receive an individualized hearing, his claim that the Excessive Bail Clause requires the same result is moot."); *see Muse*, 2018 WL 4466052, at *1 n.1; *see also Jamal A.*, 358 F. Supp. 3d at 857 n.4; *Tao J. v. Sec'y of Dep't of Homeland Sec.*, No. 18-cv-1845 (NEB/HB), 2018 WL 8141439, at *4 n.3 (D. Minn. Nov. 2, 2018), *accepting report and recommendation*, 2019 WL 1923110.

### C. EAJA

Finally, Petitioner requests that he be awarded reasonable attorney fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  Under the EAJA,

> a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  The EAJA requires the party seeking such fees and costs to submit an application and supporting documentation "*within thirty days of final judgment in the action*."  *Id.* § 2412(d)(1)(B) (emphasis added).

Petitioner's request for attorney fees and costs under the EAJA "is neither ripe nor properly submitted." *Abdulkadir A.*, 2018 WL 7048363, at *13.[8]  Therefore, the Court declines to address whether Petitioner is entitled to such fees and costs.[9]  *See id.*

[Continued on next page.]

---

[8] Several of the licensed attorneys representing Petitioner in this case also represented the petitioner in *Abdulkadir A.*
[9] Petitioner also cites 5 U.S.C. § 504.  Whether § 504 applies under the circumstances is questionable.  *See, e.g.*, *Castaneda-Castillo v. Holder*, 723 F.3d 48, 69 (1st Cir. 2013) ("[Section] 504, a provision of the EAJA that allows prevailing parties to recover the fees incurred during administrative proceedings, . . . does not apply to proceedings governed by the [Immigration and Nationality Act]." (citing *Ardestani v. Immigration & Naturalization Serv.*, 502 U.S. 129, 137 (1991)).  In any event, § 504 likewise requires that a party seeking attorney fees and costs apply for them "within thirty days of a final disposition in the adversary adjudication."  5 U.S.C. § 504(a)(2).  Thus, any request under § 504 is premature as well.

## IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) be **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. Petitioner's request for immediate release be **DENIED**.

3. If this Report & Recommendation is adopted, an Immigration Judge shall provide Petitioner with a bond hearing within 30 days of such order. At the bond hearing, the Immigration Judge shall make an individualized determination regarding whether Petitioner's detention is necessary to protect the community and/or to prevent Petitioner from fleeing.

Dated: June___28_____, 2019                     _____*s/ Tony N. Leung*_____
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota


                                                *Abshir H. A. v. Barr*
                                                Case No. 19-cv-1033 (PAM/TNL)


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).